**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SIERRA SIMMONS, : | |
| 1732 S. 20th St., Apt. C : | |
| Columbus, OH 43207 : | CIVIL ACTION NO. |
| : | |
| Plaintiff, : | |
| : | JUDGE |
| v. : | |
| : | MAGISTRATE JUDGE |
| CITY OF COLUMBUS, OHIO, : | |
| 90 W. Broad St. : | |
| Columbus, OH 43215, : | |
| : | |
| AND : | |
| : | |
| CHASE W. ROGERS, in his individual : | |
| and official capacities, : | |
| 120 Marconi Blvd. : | |
| Columbus, OH 43215, : | |
| : | |
| AND : | |
| : | **JURY DEMAND ENDORSED HEREON** |
| RANDALL C. BEAM, in his individual : | |
| and official capacities, : | |
| 120 Marconi Blvd. : | |
| Columbus, OH 43215, : | |
| : | |
| Defendants. : | |

**COMPLAINT**

**I.  Preliminary Statement**

1. This action is for injunctive relief, declaratory relief, compensatory, and punitive damages against Defendants Columbus Division of Police, Sergeant Chase W. Rogers, and Officer Randall C. Beam, due to violations of Plaintiff Sierra Simmons' constitutional rights committed on April 3, 2023 when, in following Defendant City of Columbus' unofficial policies, customs, or practices of allowing its officers to use excessive force, fabricate allegations in their reports, and/or bring false charges against citizens without probable cause to do so, Defendants Beam and Rogers:

1

(1) used excessive force by slamming Plaintiff into the ground during an unlawful arrest, causing permanent and/or serious injuries, despite Plaintiff following their commands, not resisting, and otherwise not posing a threat of harm to the officers or others; (2) maliciously prosecuted and falsely arrested Plaintiff without probable cause to do so; (3) battered Plaintiff when they touched her without consent or privilege to do so; and/or (4) made false statements in pursuing criminal charges against Plaintiff, for which they are liable under R.C. 2307.60.

**II.     Jurisdiction and Venue**

2.      Plaintiff brings her constitutional claims under the Reconstruction Civil Rights Act, 42 U.S.C. § 1983; her claims under R.C. 2921.45 and, against Defendant Rogers, R.C. 2921.11, with civil damages as provided by R.C. 2307.60(A)(1); and, against Defendants Beam and Rogers in their individual capacities, and her assault and battery claims under Ohio common law.

3.      This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

4.      Compensatory and, against Defendants sued in their individual capacities, punitive damages may be awarded under 42 U.S.C. § 1983 and the common law of the State of Ohio.

5.      Declaratory, injunctive, and equitable relief are sought pursuant to 28 U.S.C. §§ 2201; 2202; 42 U.S.C. § 1983; and Fed. R. Civ. P. 65.

6.      Costs and attorneys' fees may be awarded pursuant to Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and the common law of the State of Ohio.

7.      Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and L. R. 82.1 because the claims arose in Franklin County, Ohio, where all Defendants engage in law enforcement activities and Plaintiff was injured, assaulted, charged, and prosecuted.

**III.    Parties**

8.      Plaintiff Sierra Simmons resides in Franklin County, Ohio, is a citizen of the United

States, an African-American mother and teacher for Columbus City Schools, and had no criminal record prior to the false arrest leading to this Action.

9. Defendant City of Columbus is the governmental entity responsible for the acts and omissions of its agencies, which include the Columbus Division of Police (CPD), as a political subdivision of the State of Ohio pursuant to Chapter 2744, Ohio Revised Code; was, at all times material to this Complaint, the employer of Defendants Beam and Rogers; established or enabled policies, practices, and customs on and trained and supervised those Defendants and its other police officers in the use of physical force during an investigation and arrest, along with how to write reports describing use of force, and determined when excessive force was used and/or reports fabricated or misleading and the discipline for such misconduct..

10. Defendant Sergeant Chase W. Rogers was, at all times material to this Complaint, employed by Defendant City of Columbus in its Police Department; is being sued in his individual and official capacities; acted under color of state law; and received training by or on behalf of Defendant City of Columbus in the use of physical force during an investigation and arrest, the probable cause requirement for arrests, and writing arrest reports and probable cause affidavits, and was supervised and subject to discipline by Defendant City of Columbus when excessive force was used, false arrests made, malicious prosecutions pursued, or fabricated or misleading arrest reports and/or probable cause affidavits written.

11. Defendant Officer Randall C. Beam was, at all times material to this Complaint, employed by Defendant City of Columbus in its Police Department; is being sued in his individual and official capacities; acted under color of state law; and received training by or on behalf of Defendant City of Columbus in the use of physical force during an investigation and arrest, the probable cause requirement for arrests, and writing arrest reports and probable cause affidavits,

3

and was supervised and subject to discipline by Defendant City of Columbus when excessive force was used, false arrests made, malicious prosecutions pursued, or fabricated or misleading arrest reports and/or probable cause affidavits written.

**IV.    Facts**

12.    Plaintiff Sierra Simmons ("Ms. Simmons") is a teacher for City of Columbus City Schools and a single mother of two children with primary custody.

13.    On April 3, 2023, Ms. Simmons and her children, a daughter, then five years old ("S.G."), and her son, then seventeen years old ("C.C."), were at Ms. Simmons' sister, Genna Simmons ("Ms. G. Simmons"), and her then nine years old niece ("G.S.") at their house for a cookout, which was a typical thing for them to do so they could spend quality time together.

14.    After dinner, Ms. Simmons decided to go out and work for DoorDash, a job she does part-time when she has time, for a little while because her children were not yet ready to leave Ms. G. Simmons' house.

15.    Around 9:00 p.m., C.C. called Ms. Simmons and told her that they still wanted to stay for a little while longer, ultimately asking if they could just stay the night, which she said was fine as long as it was okay with Ms. G. Simmons.

16.    Ms. Simmons then called her sister and let her know that C.C. and S.G. wanted to stay, and Ms. G. Simmons agreed to keep them for the night.

17.    Ms. Simmons finished her work and returned home.

18.    Around 10:00 p.m., Ms. Simmons received a call from her son, who wanted to let her know that Ms. G. Simmons was arguing with her neighbor, Simone Wilson.

19.    Ms. G. Simmons and Ms. Wilson were adjoining neighbors in a duplex and had a tumultuous relationship, so Ms. Simmons was not surprised to hear that they were bickering.

4

20. Ms. Simmons asked C.C. if he wanted her to come get them, and he said no, explaining he was going to attempt to "de-escalate" the situation by talking to his aunt to calm her down.

21. Approximately thirty minutes later, C.C. called again and alerted Ms. Simmons that Ms. G. Simmons and Ms. Wilson were still arguing, and he wanted her to come pick them up.

22. At the time, Ms. Simmons lived close to her sister, and she left right away, knowing the drive would take her about ten to twelve minutes.

23. On her way to pick up her children, Ms. Simmons called her mother and let her know that Ms. G. Simmons and Ms. Wilson were arguing (which was a common occurrence) while her kids were there and that she may have to come out to her sister's house depending on what was going on.

24. As Ms. Simmons turned on to her sister's street, she saw lights flashing from police cruisers, and, not knowing what happened to cause the police to arrive, she parked in the first open space she could find, which was on the opposite side of the street.

25. Ms. Simmons turned her hazard lights on and rushed over to her sister's house, noticing that officers, her sister, Ms. Wilson, and several other individuals were standing outside, but the children were nowhere to be seen.

26. Ms. Simmons continued to rush to the door of her sister's house so she could get to the children as soon as possible.

27. No crime scene tape or any other police barriers were set up outside, and nothing about the scene indicated that she would not be able to go up to the house.

28. As she was walking towards the house, she heard an officer (later identified as Defendant Sergeant Rogers), who was standing in the yard to her left, say "hello" to her; she was

5

thrown off by this, as she had not noticed him standing there initially, but responded with, "hi," and kept walking to get her kids out of the house.

29. As she approached, another officer (later identified as Defendant Officer Beam), who was standing on her sister's porch to the right of the door, told her she "could not go in there."

30. Ms. Simmons explained that her "kids are in there; it's [her] little sister's" house and Defendant Officer Beam replied that "two kids were across the street."

31. Ms. Simmons said, "And I got three, so where's the other? Where's Genna?"

32. Instead of answering Ms. Simmons, the officers continued to demand that she get off the porch, stating, "step down here."

33. At this point, Ms. Simmons turned to get off the porch and started walking down the steps.

34. While walking down the steps, Defendant Sergeant Rogers tried to grab her arm, and she said, "Don't touch me," as she continued to walk away from the porch as instructed.

35. Defendant Sergeant Rogers replied, "Okay, then start listening."

36. At this point, Ms. Simmons, while still on the steps, heading away from the porch, yelled at the people outside of the house, "Where are the kids at?"

37. Defendant Officer Beam then grabbed Ms. Simmons' arm, and she said, "Hey, yo, get the fuck off me! I didn't do nothing!"

38. Defendant Officer Beam ignored her and said, "Put your hands behind your back."

39. While Defendant Officer Beam had both of her arms in his control, Ms. Simmons continued to yell that she did not do anything and that someone should call her mother to let her know what was going on.

40. Suddenly, once they descended the last step, Defendant Officer Beam put his feet

6

in between Ms. Simmons' feet, who was wearing slides, and kicked her leg backwards, while still in control of both of her arms, so that she had to fall forwards onto her face.

41. There was no grass in the area where Defendant Officer Beam kicked her down; that section of the yard had only dirt on the ground.

42. When she fell, Ms. Simmons' head bounced off the ground and her face was cut open from the impact.

43. As Defendants Sergeant Rogers and Officer Beam lifted her to her feet, Ms. Simmons realized that her mouth was bleeding, and she told them that she had been injured and was bleeding.

44. Defendants Sergeant Rogers and Officer Beam disregarded Ms. Simmons' injuries and instead placed her in handcuffs, tightening them so much that she was uncomfortable, refusing to loosen them when she asked them to.

45. Defendants Sergeant Rogers and Officer Beam had no reason to use force against Ms. Simmons; she was following, and offering no resistance to, their commands and did not pose a threat of harm to the officers or others.

46. Ms. Simmons did not actively resist the arrest and made no attempt to flee.

47. Moreover, Defendants Sergeant Rogers and Officer Beam had no reason to suspect Ms. Simmons committed any crimes, much less any felony-level or other severe crimes that may have justified using force against her during the arrest.

48. Ms. Simmons then sat in the police cruiser, where eventually EMS checked her out, but did not treat her injuries, leaving her with blood still covering her mouth.

49. Defendants Sergeant Rogers and Officer Beam left Ms. Simmons in the cruiser for approximately an hour, without any air conditioning or airflow, making it very hot inside, causing

her to sweat.

50. After Ms. Simmons remained in the cruiser for about an hour, the officers came back, removed the cuffs, and ticketed her for "misconduct at an emergency," a misdemeanor of the fourth degree under R.C. 2317.13(A)(1).

51. Immediately after she was released, Ms. Simmons drove herself to the hospital to be treated for her injuries while her mother stayed at her sister's house to get her kids.

52. As she walked into the hospital, one of the hospital security guards asked her, "What happened to you?"

53. Ms. Simmons replied, "the police," and gave some details about what they did to her.

54. The security guard explained that he was a former sheriff and suggested that she report the officers for injuring her.

55. Ms. Simmons then called 911 to report the officers for unlawfully arresting her and using excessive force against her.

56. Ms. Simmons suffered serious physical injuries from the excessive force used by the officers, for which she sought treatment.

57. To date, Ms. Simmons still suffers from permanent facial scarring, residual pain, headaches, and other injuries due to the excessive force Defendants Officer Beam and Sgt. Rogers used against her during the arrest.

58. On April 5, 2023, the morning after her arrest, Defendant Officer Beam knowingly and/or recklessly swore out an untruthful probable cause affidavit against Ms. Simmons for "misconduct at an emergency," causing a criminal charge to be filed against her.

59. In this probable cause affidavit, Defendant Officer Beam falsely claimed that Ms.

Simmons "refused to leave the porch / steps . . . at the scene of an emergency[,]" which was contrary to video evidence from Defendant Sergeant Rogers's body camera of her arrest that showed she in fact turned away from the door and started walking down the stairs as instructed.

60. CPD and Defendants Beam and Rogers lacked probable cause to believe that Ms. Simmons committed the crime for which she was arrested, detained, and prosecuted.

61. The Franklin County Prosecutor then relied upon, and was influenced by, the untruthful probable cause affidavit in prosecuting Ms. Simmons.

62. Ms. Simmons hired a criminal defense attorney for this charge at her own expense.

63. Ms. Simmons' court date was continued on several occasions, requiring her to appear in court on multiple occasions.

64. On September 26, 2023, the charge was ultimately dismissed without a conviction; however, she still had to pay court costs.

65. The false arrest and malicious prosecution of Ms. Simmons, and the excessive force used against her, proximately caused her economic damages; permanent physical injury; emotional distress; anguish; frustration; humiliation; and related injuries.

66. Defendants acted in conscious disregard of Ms. Simmons' constitutional and civil rights in a way that was highly probable to cause – and did cause – her substantial harm.

67. Ms. Simmons' constitutional and civil rights that Defendants violated in using excessive force against and falsely arresting her under these circumstances were then so clearly established that any competent officer would have known about them.

68. Following her unlawful arrest and Defendant Beam and Rogers' use of excessive force against her, Ms. Simmons filed a complaint against them with CDP's Internal Affairs Bureau for violating her rights.

69. On August 8, 2023, Defendant City of Columbus knowingly and/or recklessly concluded that "no evidence" supported Ms. Simmons' claims and dismissed them without issuing any inter-departmental charges against Defendants Beam and/or Rogers.

70. Defendant City of Columbus' indifference to its officers' use of excessive force, arrests of individuals without probable cause, and/or prosecution of charges against individuals without probable cause, under circumstances similar to Plaintiff's, has become a persistent and widespread custom, pattern, or practice due to the high amount of such issues arising without it taking action necessary to cure such issues of which it is aware.

V. **Claims for Relief**

A. **First Count: Excessive Force**

71. Paragraphs 1 through 70 are realleged and incorporated herein.

72. By using excessive force against Plaintiff in effectuating her unlawful arrest, Defendants Beam and Rogers violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments.

73. The persistent and widespread patterns, policies, practices, and customs, as dictated and authorized by the City of Columbus, and/or its ratification of and/or a pattern or practice of incidents of indifference to excessive force by its officers, were the moving force behind Defendants Beam and Rogers use of excessive force against Plaintiff in effectuating her unlawful arrest.

74. By its deliberate indifference to the policies, training, supervision, and discipline needed to prevent its police officers from using excessive force in circumstances similar to those involving Plaintiff, Defendant City of Columbus caused Plaintiff's deprivation of civil rights, the use of excessive force against her, and her injuries, thereby violating the Fourth and Fourteenth

Amendments.

**B.    Second Count: Malicious Prosecution**

75.    Paragraphs 1 through 70 are realleged and incorporated herein.

76.    By knowingly and/or recklessly initiating a prosecution without probable cause, for which the charge was ultimately dismissed in her favor without a conviction, Defendants committed malicious prosecution against Plaintiff in violation of her constitutional rights under the Fourth and Fourteenth Amendments, as well as Ohio common law.

77.    The persistent and widespread policies, practices, and customs, as dictated and authorized by the City of Columbus, and/or its ratification of and/or a pattern or practice of incidents of indifference to malicious prosecutions by its officers, were the moving force behind Defendants Beam and Rogers malicious prosecuting Plaintiff by arresting and charging her without probable cause to believe that Plaintiff committed a crime.

78.    By its deliberate indifference to the policies, training, supervision, and discipline needed to prevent its police officers from fabricating or omitting material facts from their reports whenever a potential claim of excessive force arises and/or in circumstances similar to those involving Plaintiff, Defendant City of Columbus caused Plaintiff's deprivation of civil rights, malicious prosecution, and injuries, thereby violating the Fourth and Fourteenth Amendments, as well as Ohio common law.

**C.    Third Count: False Arrest**

79.    Paragraphs 1 through 70 are realleged and incorporated herein.

80.    By knowingly and/or recklessly arresting Plaintiff without probable cause to do so, Defendants committed false arrest in violation of her constitutional rights under the Fourth and Fourteenth Amendments, as well as Ohio common law.

81. The persistent and widespread policies, practices, and customs, as dictated and authorized by the City of Columbus, and/or its ratification of and/or a pattern or practice of incidents of indifference to false arrests by its officers, were the moving force behind Defendants Beam and Rogers falsely arresting Plaintiff by doing so without probable cause to believe that Plaintiff committed a crime.

82. By its deliberate indifference to the policies, training, supervision, and discipline needed to prevent its police officers from arresting citizens in circumstances similar to those involving Plaintiff without probable cause to do so, Defendant City of Columbus caused Plaintiff's deprivation of civil rights, false arrest, and injuries, thereby violating the Fourth and Fourteenth Amendments, as well as Ohio common law.

### D. Fourth Count: Civil Liability for Criminal Conduct

83. Paragraphs 1 through 70 are realleged and incorporated herein.

84. By knowingly depriving, conspiring, or attempting to deprive Plaintiff of her constitutional rights in violation of R.C. 2921.45, and, as to the individual Defendants, by assaulting Plaintiff in violation of R.C. 2903.13, Defendants are liable for damages under R.C. 2307.60(A)(1).

85. By knowingly making, swearing, and/or affirming a materially false statement in his probable cause affidavit against Plaintiff in violation of R.C. 2921.11, Defendant Rogers is liable for damages under R.C. 2307.60(A)(1).

### E. Fifth Count: Assault and Battery

86. Paragraphs 1 through 70 are realleged and incorporated herein.

87. By knowingly and/or recklessly causing or attempting to cause physical harm to Plaintiff without privilege to do so, Defendants Beam and Rogers committed assault and battery.

VI. **Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court:

a. declare that Defendants, jointly or severally, have violated her constitutional rights, assaulted and battered her, and/or are civilly liable for their criminal acts;

b. order such injunctive and equitable relief as will make Plaintiff whole and prevent deprivation of other suspect's rights;

c. award compensatory and punitive damages in excess of $75,000;

d. allow reasonable attorneys' fee and costs; and

e. grant such other relief as the Court may deem appropriate.

Respectfully submitted:

By: /s/ *Madeline J. Rettig*
Madeline J. Rettig (0098816)
*(mrettig@marshallforman.com)*
John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
Helen M. Robinson (0097070)
*(hrobinson@marshallforman.com)*
MARSHALL FORMAN & SCHLEIN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (614) 463-9780

AND

By: /s/ *Frederick M. Gittes*
Frederick M. Gittes (0031444)
*fgittes@gitteslaw.com*
Jeffrey P. Vardaro (0081819)
*jvardaro@gitteslaw.com*
The Gittes Law Group
723 Oak Street

Columbus, OH 43205<br>
(614) 222-4735/Fax: (614) 221-9655

## **JURY DEMAND**

Plaintiff requests a trial by a jury of eight (8) persons.

By: <u>/s/ <i>Madeline J. Rettig</i></u><br>
Madeline J. Rettig (0098816)