UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SIERRA SIMMONS,**

       **Plaintiff,**

v.

**CITY OF COLUMBUS,** *et al.***,**

       **Defendants.**

Case No. 2:24-cv-1550
**JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Chelsey M. Vascura

### OPINION AND ORDER

This matter is before the Court on Defendants' Partial Motion to Dismiss Amended Complaint. (Mot., ECF No. 12.) Plaintiff Sierra Simmons opposes the Motion (Opp., ECF No. 15), and Defendants replied in support of their Motion (Reply, ECF No. 16). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

### BACKGROUND

This case arises out of Ms. Simmons' encounter with two Columbus Division of Police ("CPD") Officers in April 2023. Ms. Simmons alleges that the Officers violated her constitutional rights and that the City of Columbus approved of the Officers' use of force against her.

**I.    Factual Background**

On April 3, 2023, Ms. Simmons attended a cookout at her sister Genna Simmons' house with her two children. (Am. Compl., ECF No. 8, ¶ 13.) After dinner, Ms. Simmons went to work for DoorDash, a part-time job she performs when she is not working as a teacher for Columbus City Schools. (*Id.* ¶ 14.) Her seventeen-year-old son and five-year-old daughter spent the night at her sister's house with Ms. Simmons' niece, their cousin. (*Id.* ¶¶ 13–14.)

Later that evening, Ms. Simmons received a call from her son indicating that Genna was arguing with her neighbor, with whom she had a tumultuous relationship. (*Id.* ¶¶ 18–19.) Her son

1

told her that he would attempt to de-escalate the situation and that Ms. Simmons did not need to come pick up her children at that time. (*Id.* ¶ 20.) But thirty minutes later, her son called her back and asked to be picked up because Genna and the neighbor were still arguing. (*Id.* ¶ 21.)

When Ms. Simmons arrived at her sister's house soon after, she saw multiple police cruisers with their emergency lights flashing. (Am. Compl., ¶ 24.) She parked across the street, turned on her hazard lights, and made her way to her sister's residence to find her children. (*Id.* ¶¶ 25–26.) Although she saw other people, including her sister and the neighbor, standing outside of her sister's residence, she did not see her children. (*Id.* ¶ 25.) As she approached the residence, she did not see "crime scene tape or any other police barriers" that "indicated she would not be able to go up to the house." (*Id.* ¶ 27.) She was, however, greeted in the front yard by a police officer, later identified as Defendant Sergeant Chase Rogers. (*Id.* ¶ 28.) Sergeant Rogers said "hello" to her, and, noticing him for the first time, she responded with "hi" before continuing towards the residence. (*Id.*)

On the porch of her sister's house, a different police officer, later identified as Defendant Officer Randall Beam, told Ms. Simmons that she "could not go in there" and that her "two kids were across the street." (*Id.* ¶¶ 29–30.) Ms. Simmons responded that there were three children— her two children and her niece—and asked where the third child was. (*Id.* ¶ 31.) Without answering, the Officers told her to step down from the porch. (*Id.* ¶ 32.) When she complied, Sergeant Rogers allegedly tried to grab her arm, but she told him not to touch her and continued to walk away from the porch. (*Id.* ¶ 37.) Officer Beam then grabbed her arm and instructed her to put her hands behind her back. (*Id.* ¶ 37–39.) Ms. Simmons began shouting to people in the vicinity, yelling that she had done nothing wrong, and pleading for someone to call her mother. (*Id.* ¶ 39.)

Ms. Simmons alleges that she complied with the Officers' instructions to step off the porch but was thrown to the ground by the Officers after she descended the last step. (*Id.* ¶ 40; Mot., PageID 69.) She states that Officer Beam put his foot between her feet and then kicked her leg backwards while holding both of her arms, causing her to fall forward on her face. (Am. Compl., ¶ 40.) Because there was no grass where she fell, her face was "cut open from the impact" of her head hitting the ground. (*Id.* ¶¶ 41–42.)

The Officers then handcuffed her and placed her in the back of a police cruiser, where "EMS checked her out, but did not treat her injuries, leaving her with blood still covering her mouth." (*Id.* ¶¶ 44, 48.) She remained in the back of the police cruiser for an hour without air conditioning, "making it very hot inside, [and] causing her to sweat." (*Id.* ¶ 49.) Eventually, the Officers removed her handcuffs and charged her with misconduct at an emergency, a fourth-degree misdemeanor in violation Ohio Revised Code § 2317.13(A)(1). (*Id.* ¶ 50.) That charge was later dismissed. (*Id.* ¶ 64.)

After being released from police custody, Ms. Simmons alleges that she immediately went to the hospital to seek treatment, where a hospital security guard asked what happened to her. (*Id.* ¶ 52.) She told him she had been injured by the police, and she alleges that the security officer encouraged her to report the Officers. (*Id.* ¶¶ 52–54.) Ms. Simmons then filed a complaint against Officers Beam and Sergeant Rogers with the CPD's Internal Affairs Bureau. (*Id.* ¶ 68.) She claims that she suffered from permanent facial scarring, residual pain, headaches, and other injuries caused by the excessive force used against her by Officer Beam and Sergeant Rogers. (*Id.* ¶ 56–57.) But she alleges that the City of Columbus dismissed her claims after concluding that "no evidence" supported her charges. (*Id.* ¶ 69.)

## II. Procedural Background

Ms. Simmons filed this lawsuit on April 3, 2024. (*See* Compl., ECF No. 1.) Defendants then filed a partial motion to dismiss. (ECF No. 3.) In response to that motion, Ms. Simmons amended her Complaint, thus mooting the first-filed motion to dismiss. (Am. Compl., ECF No. 8; *see also* ECF No. 9.) Her Amended Complaint raises five claims under 42 U.S.C. § 1983 for violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution. (Am. Compl.) She alleges that Defendants (1) used excessive force against her (*id.* ¶¶ 78–81), (2) maliciously initiated a prosecution against her without probable cause (*id.* ¶¶ 82–85), (3) falsely arrested her without probable cause (*id.* ¶¶ 86–89), (4) violated Ohio Revised Code § 2921.45 by engaging in criminal conduct that deprived her of her civil rights (*id.* ¶¶ 90–92), and battered her when they touched her without her consent in violation of Ohio law (*id.* ¶¶ 93–94). She sues Officer Beam and Sergeant Rogers in their individual and official capacities, as well as the City of Columbus. (*Id.* ¶¶ 9–11.)

Soon after, Defendants filed the Motion now before the Court. (Mot., ECF No. 12.) Defendants move to dismiss all claims against the City of Columbus and to dismiss the claims against Officer Beam and Sergeant Rogers in their official capacities. (*Id.* PageID 66.) Defendants argue that Ms. Simmons has failed to adequately plead a claim for relief under § 1983, that the City has immunity from her state-law claims under Ohio Revised Code § 2744, and that the official capacity claims against Officer Beam and Sergeant Rogers are duplicative of the claims against the City and should be dismissed. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive

4

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard from *Twombly*). Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

The City moves to dismiss all of Ms. Simmons' claims against it. The Court declines to do so because Ms. Simmons has adequately pled a claim for municipal liability under § 1983. The Court, however, will dismiss Ms. Simmons' claim for false arrest against the City under Count 3 of the Amended Complaint, because the City is entitled to immunity as a political subdivision. Finally, since the Court allows Ms. Simmons to proceed on her *Monell* claims against the City, her claims against Officer Beam and Sergeant Rogers in their official capacities are redundant and must be dismissed.

### I. Ms. Simmons may proceed on her *Monell* liability claims against the City

Ms. Simmons brings three of her five claims against the City under 42 U.S.C. § 1983, alleging that the City violated her constitutional rights. (*See* Am. Compl.) She alleges that Officer Beam and Sergeant Rogers' unconstitutional conduct in using excessive force against her and prosecuting and arresting her without probable cause is attributable to the City's customs. (*See id.*; Opp., PageID 96–103.) Defendants argue that Ms. Simmons has failed to put forth sufficient

5

factual allegations to show that the City's customs or policies were the moving force behind her alleged injuries. (Mot., PageID 71–72; Reply, PageID 108–09.)

A municipality may be held liable under § 1983 for customs or policies that violate a private individual's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (explaining that a municipality is only responsible for its own actions and wrongdoings, it is not vicariously liable under § 1983 for the actions of its employees). But generally, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy[.]" *Phillips v. City of Cincinnati*, No. 1:18-cv-541, 2019 U.S. Dist. LEXIS 89421, at *29 (S.D. Ohio May 29, 2019) (Black, J.) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985)).

Under *Monell* and its progeny, a municipality's customs or policies can take the form of: (1) an official policy or legislative enactment, (2) decisions or ratifications of final decision makers, (3) inadequate training or supervision, or (4) a custom of acquiescence to or tolerance of rights deprivations. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citation omitted). To succeed on a *Monell* claim, a plaintiff must establish the existence of a municipality's custom or policy, a constitutional violation, and a causal link between the two. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (explaining that the custom must be "the moving force behind the deprivation of the plaintiff's rights").

Ms. Simmons does not allege that the City maintained an official unconstitutional policy. (Opp., PageID 96 (stating that "[o]n their face, the policies of the City . . . naturally prohibit excessive force, arrests without probable cause, and false affidavit statements").) Instead, she proceeds under the second, third, and fourth avenues. (*Id.* PageID 97–103.)

6

### A. Ms. Simmons adequately pled a ratification theory of municipal liability.

One way that a single incident can constitute municipal policy is "if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). A final decision maker ratifies an action if the decision maker provides "affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993).

A municipality can ratify the acts of its employees by failing to investigate meaningfully and to punish allegations of unconstitutional conduct. *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247–48 (6th Cir. 1989). But the Sixth Circuit has cautioned that "mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification. Otherwise, [a municipality] would be liable for all of the discretionary decisions of its employees, and this would be indistinguishable from respondeat superior liability." *Feliciano*, 988 F.2d at 656 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Therefore, ratification "requires affirmative approval of a particular decision made by a subordinate." *Id.*

Ms. Simmons argues that the City, through CPD, has a custom or policy of ratifying excessive uses of force by "routinely exonerat[ing]" officers "despite the existence of evidence demonstrating their misconduct." (Opp., PageID 98.) The City and CPD's acquiescence and past ratification, according to Ms. Simmons, "fueled [Officer Beam and Sergeant Rogers] to act with impunity." (*Id.*) She argues that Officer Beam and Sergeant Rogers "anticipated ratification, followed orders based on that anticipation, and ratification occurred." (*Id.* PageID 97.) Since the investigation by CPD into the Officer Beam and Sergeant Roger's use of force ended without disciplinary action, Ms. Simmons argues that the City ratified the Officers' conduct. (*Id.*)

7

Under Ohio law, "the chief of police is the final policymaker with respect to investigations that do not result in disciplinary action." *Wright v. City of Canton*, 138 F. Supp. 2d 955, 966 (N.D. Ohio 2001). Here, Ms. Simmons alleges that the Division Chief and Director of CPD possessed final policymaking authority and routinely exonerated, or acquiesced to, CPD Officers' excessive use of force. (Opp., PageID 98.) Contrary to Defendants' assertion, she has therefore identified a plausible final decision maker. (*See* Mot., PageID 73–74; Reply, PageID 110, n.1.)

The City argues that an investigation that occurred *after* the alleged unconstitutional conduct cannot be the moving force behind the constitutional violation. (Mot., PageID 74; Reply, PageID 110–11.) But the City's focus on the sequential order of events is misplaced. "The question . . . is not whether the ratification caused the injury. It is whether the misconduct that caused the injury was ratified through a failure to investigate, such that it may be considered official policy." *Davis v. City of Columbus*, No. 2:17-cv-823, 2021 U.S. Dist. LEXIS 183921, at *18 (S.D. Ohio Sep. 27, 2021) (Marbley, J.). The City does not dispute that CPD's investigations found no wrongdoing by Officer Beam or Sergeant Rogers, thereby confirming that the use of force against Ms. Simmons was consistent with CPD policy. *Id.* For a motion to dismiss, the Court finds that Ms. Simmons has satisfied her burden to proceed under a ratification theory of municipal liability.

### B. Ms. Simmons alleged sufficient facts to proceed on either an inadequate supervision or custom of acquiescence theory of municipal liability.

Although the final two theories (inadequate training or supervision and acquiescence) differ in some ways, they both require a showing of deliberate indifference and causation. To avoid redundancies, the Court addresses the final theories of municipal liability together.

The third avenue to establish *Monell* liability is through the existence of a policy of inadequate training or supervision. A municipality's decision not to train or supervise employees

regarding "their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Osborn v. City of Columbus*, No. 2:20-cv-1229, 2022 U.S. Dist. LEXIS 107321, at *11 (S.D. Ohio June 15, 2022) (citation omitted) (explaining that the legal standards for a claim of inadequate supervision and one of inadequate training are effectively the same). A plaintiff must show "(1) the training or supervision was inadequate for the tasks performed, (2) the inadequacy was the result of the municipality's deliberate indifference, and (3) the inadequacy was closely related to or actually caused the injury." *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014).

The fourth way to establish municipal liability under *Monell* is through the existence of a custom of tolerance or acquiescence of federal rights violations. To show custom through acquiescence, a plaintiff must show (1) the existence of a clear and persistent pattern of wrongdoing; (2) notice or constructive notice on the part of the municipality; (3) the municipality's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the municipality's custom was the "moving force" or direct causal link in the constitutional deprivation. *Stucker v. Louisville Metro Gov't*, No. 23-5214, 2024 U.S. App. LEXIS 11731, at *27 (6th Cir. May 13, 2024) (citing *Doe v. Claiborne Cnty. ex rel. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996)). Since both theories require a showing of deliberate indifference, the Court begins there.

### i.     Deliberate Indifference

A plaintiff can establish the municipality's deliberate indifference by showing that "the municipality has failed to act in response to repeated complaints of constitutional violations by its officers." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (citation omitted). To succeed, the plaintiff must show that the municipality was aware of "prior instances of

9

unconstitutional conduct such that it was clearly on notice that the training in this particular area was deficient and likely to cause injury and yet ignored a history of abuse." *Id.* (quotations marks omitted) (citing *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).

A municipality's inaction in light of notice "is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick*, 563 U.S. at 61–62 (quotations omitted). "In other words, deliberate indifference can be demonstrated through '[a] pattern of similar constitutional violations' showing that "[p]olicymakers" continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" *Stucker*, 2024 U.S. App. LEXIS 11731, at *32–33 (quoting *Connick*, 563 U.S. at 62.)

To illustrate a pattern of constitutional violations by CPD Officers allegedly ignored by the City, Ms. Simmons offers allegations of CPD encounters with members of the public from 2017, 2020, and 2022. (*See* Am. Compl., ¶¶ 71–75.) She describes an incident in September 2017 when four officers punched, tased, stomped, kicked, and put in a head lock an individual after he allegedly resisted arrest. (*Id.* ¶¶ 73–75.) The individual sustained severe injuries and was hospitalized for five days, but CPD ultimately concluded that the officers did not violate CPD's use of force policy. (*Id.*)

Next, Ms. Simmons references allegations of excessive force made against CPD officers during protests in the summer of 2020 in connection with the death of George Floyd. (Am. Compl., ¶ 72.) She references this Court's decision in *Alsaada v. City of Columbus*, to support her position. (Opp., PageID 102 (citing 536 F. Supp. 3d 216 (S.D. Ohio 2021) (Marbley, J.))). In that case, the Court noted several times when officers used excessive force over the course of the protests. *Id.* at

10

242–45. Even though officials admitted that the some of the officers' conduct was improper, no disciplinary action was taken. *Id.* at 273. On the plaintiff's motion for preliminary injunction, the Court concluded that the plaintiff adequately pled all four elements of an inaction theory of municipal liability. *Id.*

Last, Ms. Simmons describes an incident in August 2022, a year before her encounter with CPD officers, where officers slammed a civilian face-first into the ground and accused the individual of disregarding an order. (*Id.* ¶ 71.) According to Ms. Simmons, body camera footage from the encounter shows that the individual was trying to comply with the officers' order but was not given enough time to do so. (*Id.*)

Defendants argue that Ms. Simmons has not plausibly alleged a pattern of unconstitutional conduct to place the City on notice. (Mot., PageID 77.) Defendants contend that three allegations of isolated and distinguishable instances of alleged excessive force are insufficient. (*Id.*) But the cases cited by Defendants to support this proposition all address the sufficiency of a plaintiff's evidence on motions for summary judgment—not motions to dismiss. *See, e.g.*, *Cretacci v. Hare*, Nos. 21-5786, 21-5833, 2022 U.S. App. LEXIS 32537, at *28 (6th Cir. Nov. 23, 2022) (concluding that three incidents insufficient to establish a clear and persistent pattern of violations and granting the municipal defendant summary judgment); *Wallace v. Coffee Cty.*, 852 F. App'x 871, 876 (6th Cir. 2021) (six incidents over two-month period perpetrated by the same two individuals failed to raise a genuine issue of material fact that a policy or custom existed); *Jones v. Muskegon Cty.*, 625 F.3d 935, 946 (6th Cir. 2010) (affirming summary judgment for the municipality and stating that "a jury could not reasonably infer from these five incidents alone that the County has a widespread, permanent, and well-settled custom"); *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (affirming district court's summary judgment decision for the municipality and explaining

that three cases over three years, without context like the size of the police department, or the amount of arrests, cannot establish a pattern of constitutional violations).

Ms. Simmons responds that Defendants improperly urge the Court to adopt a heightened pleading standard for § 1983 claims. (Opp., PageID 99.) "The Supreme Court has explicitly rejected that a heightened pleading standard applies to § 1983 claims against municipalities." *Marx v. Janke*, No. C-1-02-050, 2004 U.S. Dist. LEXIS 30104, at *23 (S.D. Ohio Sep. 2, 2004) (Dlott, J.) (citing *Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 167 (1993)).

This Court has found that three incidents of excessive force are enough to put officials on notice that people could be subject to constitutional deprivations if the problem is not remedied. *Seymour v. Miller*, No. 2:21-cv-313, 2022 U.S. Dist. LEXIS 4091, at *22 (S.D. Ohio Jan. 10, 2022) (Deavers, M.J.) (finding three incidents sufficient under the fourth avenue of pleading municipal liability); *see also Pippin v. City of Reynoldsburg*, No. 2:17-cv-598, 2019 U.S. Dist. LEXIS 166351, at *8–9 (S.D. Ohio Sep. 27, 2019) (Marbley, J.) (refusing to dismiss outright plaintiff's § 1983 claim for failure to state a claim). By alleging similar incidents from years prior, Ms. Simmons sufficiently alleged that the interaction she had with CPD in April 2023 may not have been an isolated incident. Although the specific incidents may have factual variations, the differences between those incidents and Ms. Simmons' encounter with CPD are better probed on a motion for summary judgment. Accordingly, Ms. Simmons' allegations that the City failed to respond to repeated instances of constitutional violations by its officers are sufficient to plead deliberate indifference and withstand a motion to dismiss.

### ii. Causation

Finally, to hold the City responsible, Ms. Simmons must show that the City's custom of tolerance or acquiescence of federal rights violations was the "moving force" behind her constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (explaining that for an inadequate training or supervision claim, the plaintiff must prove "that the inadequacy is closely related to or actually caused the plaintiff's injury") (internal quotation marks omitted).

Accepting Ms. Simmons' allegations as true, it is at least plausible that CPD's alleged failure to act on knowledge of previous instances of excessive force was the "moving force" behind subsequent violations of the same type. *See Alsaada*, 536 F. Supp. 3d at 273. A jury could reasonably conclude that the pattern of inadequate investigations allowed officers, including Officer Beam and Sergeant Rogers, to perpetuate misconduct without fear of repercussions, such that causation is satisfied.

The Court finds that Ms. Simmons has properly stated a claim for relief and that her *Monell* liability claim survives Defendants' Partial Motion to Dismiss. Ms. Simmons has put forth enough evidence so that this Court, when drawing inferences in her favor, may conclude that the City implicitly authorized, approved, or acquiesced to rights violations like the violation allegedly experienced by Ms. Simmons. Ms. Simmons has also explained how the City's "policy of inaction" was the moving force behind her harm. Although further discovery is necessary, at this stage, this Court finds dismissing Ms. Simmons' claims would be improper. Defendants' Partial Motion to Dismiss is **DENIED** on these grounds.

## II. Ms. Simmons' official capacity claims against Officer Beam and Sergeant Rogers are dismissed.

Ms. Simmons brings her claims against Officer Beam and Sergeant Rogers in both their individual and official capacities. (Am. Compl., ¶¶ 10–11.) Defendants argue that her claims against Officer Beam and Sergeant Rogers are duplicative of the claims brought against the City of Columbus and should be dismissed. (Mot., PageID 79–80.)

Suing a government employee in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kouider v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 780 (N.D. Ohio 2020) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). That is because while a personal capacity suit imposes liability on a government official for actions taken under color of law, "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citation omitted). When a government entity is also named as a defendant, along with the government official in his or her official capacity, federal courts will dismiss the official capacity claim. *Id.*; *see also Johnson v. Wash. Cty. Career Ctr.*, No. 2:10-cv-076, 2010 U.S. Dist. LEXIS 62597, at *11 (S.D. Ohio June 22, 2010) (Smith, J.) ("Courts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit.").

To avoid this result, Ms. Simmons cites the doctrine of *Ex Parte Young*. (Opp., PageID 104.) *Ex Parte Young* provides an exception to sovereign immunity which shields states, and state officials in their official capacities, from suits for money damages in federal courts. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). *Ex Parte Young* allows a plaintiff to bring claims for prospective relief against state officials sued in their official capacities to prevent future federal constitutional

14

or statutory violations. *Id.* at 412 (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)).

Defendants contend that *Ex Parte Young* does not apply because Ms. Simmons does not seek prospective relief and "the sovereign immunity to which *Ex Parte Young* provides an exception [] does not apply to municipalities such as the City." (Reply, PageID 117.) This Court agrees. Sovereign immunity "does not extend to counties and similar municipal corporations, such as the defendants associated with the City." *Boler*, 865 F.3d at 410 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (explaining that sovereign immunity attaches only to the state or an arm of the state). Since the City is not a state entity protected by sovereign immunity under the Eleventh Amendment, there is no immunity for this exception to apply to.

Accordingly, Ms. Simmons' claims against Officer Beam and Sergeant Rogers in their official capacities are effectively claims against the City. Ms. Simmons cannot avoid this result under the doctrine of *Ex Parte Young*. Her claims against Officer Beam and Sergeant Rogers in their official capacities, who are standing in the shoes of the City, are more appropriately raised against the City directly. Any wrongdoing by Officer Beam and Sergeant Rogers is attributable to the City, thus naming them in their official capacities was redundant. Since the City is the real party in interest, and is properly named in this suit, the Court will dismiss Ms. Simmons' claims against Officer Beam and Sergeant Rogers in their official capacities.

**III.     Ms. Simmons' state-law claim against the City of Columbus for false arrest is dismissed because the City is entitled to immunity.**

Finally, Ms. Simmons explains that she does not contest Defendants' Motion arguing that her state-law claim against the City for false arrest should be dismissed. (Opp., PageID 105–06.) Defendants explained that the City is a political subdivision immune from liability under Ohio

15

Revised Code § 2744, *et seq.* (Mot., PageID 78.) Since this portion of Defendants' Motion is uncontested, the Motion is **GRANTED** and Ms. Simmons' claim against the City for false arrest under Count 3 of the Amended Complaint is dismissed.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Partial Motion to Dismiss. (ECF No. 12.) Ms. Simmons' claim against the City of Columbus under Count 3 of the Amended Complaint is **DISMISSED** because the City is entitled to immunity as a political subdivision under Ohio Revised Code § 2744, *et seq.* Ms. Simmons' claims against Officer Beam and Sergeant Rogers in their official capacities are **DISMISSED** as duplicative of the *Monell* liability claims brought against the City directly. Ms. Simmons may proceed on her *Monell* liability claims against the City and her claims against Officer Beam and Sergeant Rogers in their individual capacities only.

This case remains open.

**IT IS SO ORDERED.**

**2/14/2025**                                           **s/Edmund A. Sargus, Jr.**
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**